## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

## CIVIL NO. 1:05CV352

| | |
|---|---|
| **JAMES L. HARRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **MEMORANDUM** |
| **JO ANNE B. BARNHART,** ) | **AND ORDER** |
| **Commissioner of Social** ) | |
| **Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the parties' cross-motions for

summary judgment.


## I. STATEMENT OF FACTS

Plaintiff is a 46 year old male with a high school education and past

relevant work experience as a textile maintenance mechanic,

weaver/doffer in a textile plant, and as a gas station attendant.  **Plaintiff's**

**Memorandum in Support of Summary Judgment ("Plaintiff's**

**Memorandum"), at 4; Transcript of Proceedings ("Tr."), filed January**

**24, 2006, at 454, 460.**  Plaintiff first filed an application for disability

insurance benefits on or about November 9, 2001, alleging a disability onset date of March 15, 1997. *Id.*, **at 149-58.** Plaintiff alleged his disability was due to back and knee pain and high blood pressure. *Id.*, **at 150.** Following a series of claims, denials, hearings, appeals, and remands,[1] Plaintiff's case arrived back before an Administrative Law Judge ("ALJ") for hearing on April 7, 2005. **Plaintiff's Memorandum, at 4; Tr., at 19.** The ALJ found the Plaintiff was not entitled to disability benefits. **Tr., at 19-25.**

The record evidence reveals that Plaintiff first experienced difficulties with his back in 1989 after injuring himself at work. *Id.*, **at 457.** He re-injured his back in 1992, ultimately resulting in back surgery in December 1993. *Id.*, **at 201-04, 457-59.** Plaintiff continued experiencing back pain after surgery, and such pain was treated with medication. Plaintiff returned to his job at a food processing plant following surgery, but eventually left in September 1995 because he "just didn't feel [he] could do the job anymore." *Id.*, **at 457-59.** Plaintiff then began working at his brother-in-

---

[1] The specifics of this matter's long history are immaterial to the present issues, and the parties do not dispute the basic facts surrounding such history. *See*, **Plaintiff's Memorandum, at 3-4 (outlining the procedural history of this matter in a "Statement Of The Case"); Defendant's Memorandum in Support of the Commissioner's Decision, filed May 23, 2006 ("Defendant's Memorandum"), at 1 ("concur[ring] with the plaintiff's Statement Of The Case").**

law's gas station as an attendant. ***Id., at 460.*** At some point in 1997
Plaintiff's physician refused to continue to provide him with medication, and
advised him that he should be seen by and obtain his medication from a
pain management clinic. ***Id., at 461.*** No longer receiving his pain
medication, Plaintiff left the service station job in 1997. ***Id., at 461.***
Plaintiff has not worked since that time.

Plaintiff and his wife testified at the hearing before the ALJ that the
pain Plaintiff experiences as a result of his back problems is constant and
debilitating. They testified that Plaintiff spends most of the day laying on
the floor and Plaintiff averred that the back pain results in headaches,
dizziness, chest pains, and sometimes worsens his vision. ***Id., at 472,
486.*** Plaintiff also testified that as a result of the pain he is unable to sit,
stand, or drive for extended periods, and that he cannot carry anything
other than the occasional bag of groceries. ***Id., at 467-68.***

Plaintiff's medical records, however, covering a period of time before,
during, and after the period in question in this case (*i.e.*, February 20, 2002
through June 30, 2002) do not reveal the degree of limitation of which
Plaintiff testified. While there are numerous doctor's notes concerning
Plaintiff's back, as well as records of doctor's visits for his knee and blood

pressure, the record does not reveal that Plaintiff was complaining of the type of extreme limitations that he testified his pain was causing. *See, id., at 201-322.* No physician ever labeled Plaintiff "disabled," nor was he placed on any physical restrictions until June 2003. *Id., at 23, 201-322.*

Plaintiff also testified regarding his left knee pain and high blood pressure. His knee pain began at some point in the late 1990's, but began worsening in 2001. *Id., at 210, 465.* He presented at the James Medical Clinic with complaints of knee pain on three different occasions within an 8-day period. *Id., at 210-12.* Physicians performed various tests in order to evaluate Plaintiff's movement, performed a visual inspection of the knee, and eventually sent Plaintiff for an x-ray which revealed "no injury or abnormality." The notes of Plaintiff's evaluations reveal that his physicians suspected he had tendinitis or chondromalacia.[2] *Id., at 210-12.* Finally, Plaintiff testified that he had suffered high blood pressure since some point in the 1990's, but that he did not begin treatment until 2001. *Id., at 464-65.*

_____

[2] "Tendinitis" is an "inflammation of tendons and of tendon-muscle attachments," while "chondromalacia" is a "softening of the articular cartilage, most frequently in the patella." **Dorland's *Illustrated Medical Dictionary*, at 1667, 321 (28th ed. 1994).**

Plaintiff was prescribed medication for this blood pressure and has been taking such medication since that time. *Id., at 464-65.*

In addition to the testimony of Plaintiff and his wife, along with the consideration of Plaintiff's medical records, the ALJ's decision was also based on the testimony of a vocational expert given at the hearing. The vocational expert had experience as a vocational rehabilitation consultant since 1984 and a vocational expert for the Social Security Administration's Office of Hearings and Appeals since 1985. *Id., at 118.* She holds a graduate-level degree, and has been a Certified Rehabilitation Counselor since 1985. *Id., at 118-19.* The vocational expert classified Plaintiff's prior relevant work at the food processing plant and textile plant as heavy, skilled jobs. *Id., at 479.* She classified Plaintiff's position as gas station attendant as generally medium, semi-skilled work, but noted that based on Plaintiff's testimony that he was able to lie down during breaks and did not perform any sort of heavy lifting, "[the position] sounds like [it] was no more than light as performed[.]" *Id., at 479.* The vocational expert further testified to the existence of multiple jobs that someone with Plaintiff's limitations could perform. *Id., at 479-80.*

Taking into account the various testimony and documentary evidence, the ALJ found Plaintiff was not entitled to disability insurance benefits.  The ALJ's decision was subsequently confirmed by the Appeals Council, and Plaintiff filed the current action on December 1, 2005, seeking review of such decision.  *See*, **Complaint, filed December 1, 2005, ¶¶ 1,6, 9.**  After Defendant filed its answer, both parties moved for summary judgment.

## II. STANDARD OF REVIEW

### A. Denial of Social Security Disability Benefits

For purposes of Social Security disability insurance benefits, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. § 423(d)(1)(A).**  The regulations proscribe a five-step sequential process for determining disability.  *See*, **20 C.F.R. § 404.1520 (a)(4).**  The first step requires a determination of whether the claimant is engaged in "substantial gainful activity;" if so, a claim for disability benefits

will be denied.  **20 C.F.R. § 404.1520(a)(4)(i).**  If the claimant is not so

engaged, the second step is to determine whether the claimant has a

severe medically determinable physical or mental impairment (or

combination of impairments) that is expected to result in death, or that has

lasted or can be expected to last for a continuous period of at least twelve

months.  **20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509.**  If such impairment

does not exist, a finding of "not disabled" is entered.  However, if a

claimant does suffer from such an impairment, the analysis moves to the

third step which requires a consideration of the medical severity of the

impairment or combination of impairments.  **20 C.F.R. § 404.1520(a)(4)(iii).**

If the impairment or combination of impairments meets or equals one of the

listings provided in Appendix I of 20 C.F.R. Part 404, subpart P, a finding of

"disabled" is warranted and the analysis will terminate.  **20 C.F.R. §**

**404.1520(a)(4)(iii).**  If a claimant cannot satisfy the third step, the analysis

moves forward to a consideration of the claimant's past relevant work and

residual functional capacity.  If the claimant can perform his past relevant

work, the analysis ends and a determination of "not disabled" is

appropriate.  **20 C.F.R. § 404.1520(a)(4)(iv).**  If the claimant cannot

perform his past relevant work, the fifth and final phase of the sequential

process requires a determination of whether, taking account of the claimant's residual functional capacity, education, age, and past work experience, the claimant can make an adjustment to other work that exists in significant numbers in the national economy. **20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c).** Only if the claimant cannot make such an adjustment will he be considered "disabled." **20 C.F.R. § 404.1520 (a)(4)(v).**

Where a claim for Social Security disability benefits has been denied and the case presented to a district court, the Court does not conduct a *de novo* review of the decision of an ALJ. ***See, Smith v. Schweiker*, 795 F.2d 343,345 (4th Cir. 1986).** Rather, the Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." ***Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Pittman v. Massanari*, 141 F.Supp.2d 601, 605-06 (W.D.N.C. 2001); 42 U.S.C. § 405(g).** "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict

were the case before a jury, then there is substantial evidence." **Harrison**

**v. Comm'r of the Soc. Sec. Admin.**, 201 F.3d 436 (table), 1999 WL

**991418, at \*1 (4th Cir. 1999) (citations and internal quotations omitted).**

> In reviewing for substantial evidence, the reviewing court does
> not reweigh conflicting evidence, make credibility
> determinations, or substitute its judgment for that of the
> Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456
> (4th Cir. 1990). If, in the face of conflicting evidence,
> reasonable minds could differ as to whether a claimant is
> disabled, it is the Commissioner or the ALJ who makes the
> decision. *See Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.
> 1987). Accordingly, the issue before the Court is not whether
> [Plaintiff] "is disabled, but whether the ALJ's finding that she is
> not disabled is supported by substantial evidence and was
> reached based upon a correct application of the relevant law."
> *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

**Harrison**, 1999 WL 99148, at \*1.

## B. Summary Judgment

Each party has moved for summary judgment pursuant to Federal

Rule of Civil Procedure 56. Summary judgment is appropriate if there is no

genuine issue of material fact and judgment for the moving party is

warranted as a matter of law. **Fed. R. Civ. P. 56(c).** "A genuine issue

exists 'if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.'" ***Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).**

Where, as here, both parties have moved for summary judgment, the Court will consider each motion separately. ***Massie v. Bd. of Trs.*, 357 F.Supp.2d 878, 881 (W.D.N.C. 2005).** In doing so, the evidence must be viewed in a light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the nonmoving party's favor. ***See*, *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 259 (4th Cir. 2005).** The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleading[s], but [must] . . ., by affidavits or as otherwise provided in [Rule 56], . . . set forth specific facts showing that there is a genuine issue for trial." **Fed. R. Civ. P. 56.**

## III. ANALYSIS

Plaintiff presents three bases on which he believes the Court should reverse the ALJ's finding that he is not disabled or, alternatively, remand the case to the ALJ.

Plaintiff first "contend[s] that the ALJ erred in determining that [his] combination of impairments did not render him disabled based on his allegations of pain and limitations from pain prior to June 30, 2002."[3] **Plaintiff's Memorandum, at 5.** Plaintiff contends that the evidence, both subjective and objective, should have resulted in a finding of "disabled." *Id.* In reviewing such determination, this Court looks only to whether it is "supported by substantial evidence and w[as] reached through application of the correct legal standard." *Craig*, **76 F.3d at 589.** Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Harrison*, *supra.* The Court will not re-weigh evidence, nor will it make credibility determinations. *Id.* Having reviewed the entire record of proceedings, the Court finds the ALJ's decision that Plaintiff's "combination of impairments did not render him

_____

[3] A portion of Plaintiff's "Argument I" is devoted to his contention that the disability onset date of June 11, 2003, was "erroneously picked randomly[.]" **Plaintiff's Memorandum, at 5-6.** However, as Defendant aptly notes, such issue was not before the ALJ. Rather, the issue was whether Plaintiff was disabled between the period February 20, 2002, and June 30, 2002. *See*, **Tr., at 20 (wherein the ALJ sets out the issues in the case, and specifically remarks that "[t]he finding of disability in 2003 is not an issue before me[.]"); Defendant's Memorandum, at 5-6.** Therefore, Plaintiff's arguments as to allegedly erroneous, random date selection by a different ALJ in a previous hearing are misdirected, as there is nothing for this Court to review in such regard.

disabled based on his allegations of pain and limitations from pain prior to June 30, 2002" supported by substantial evidence. **Plaintiff's Memorandum, at 5.**

Briefly, it is clear from the ALJ's decision that he considered Plaintiff's testimony (and that of his wife) regarding his pain and its limiting effects in reaching his decision. ***See, e.g.*, Tr., at 22-23.** Plaintiff's testimony regarding severe limitations, however, was unsupported by the medical documentation contained in the record. The ALJ determined that, in the face of such conflict, he would give greater credence to the medical records. He also determined that the record contained sufficient evidence from which to form an opinion in general and, more specifically, an opinion that Plaintiff was not disabled. The Court agrees that sufficient evidence existed, and it is not for this Court to re-weigh such evidence nor to make credibility determinations regarding Plaintiff and his testimony. Such decisions are for the ALJ. ***Harrison*, *supra*.** The Court finds Plaintiff's first assignment of error to be without merit.

Plaintiff's second argument for reversal is that "[t]he ALJ erred . . . under SSR 84-25 and 20 CFR § 404.1565,416.965 based on the evidence of record" in "determin[ing] that the claimant could return to his work as a

gas station attendant." **Plaintiff's Memorandum, at 6.** The basis of Plaintiff's objection is the hearing testimony of Plaintiff and his wife regarding Plaintiff's "frequent[] need[] to lie down during the day as a means to get his pain to subside," and the fact that Plaintiff was allowed "to lie down as needed during the workday, [and] take frequent rest breaks" while working at the gas station because a relative owned the establishment. *Id., at 6-7.* Plaintiff contends that the ALJ erred by "not discuss[ing] any of these special circumstances when discussing [Plaintiff's] past relevant work." *Id.* Plaintiff's objection suffers from two errors.

First, reading the transcript of Plaintiff's hearing in conjunction with the ALJ's written decision, it is clear that the "special circumstances" of Plaintiff's service station employment *were* taken into account by the ALJ. The vocational expert testified at the hearing that Plaintiff's gas station attendant job was one that is generally described as medium, semi-skilled work; she also stated that based on Plaintiff's testimony regarding the working arrangement, "it sounds like [it] was no more than light as performed[.]" **Tr., at 479.** When the ALJ described Plaintiff's work history, he described Plaintiff's gas station work not as "medium work," but as "light

duty work," necessarily then factoring in the "special circumstances." *Id.,* **at 23.** Second, even if Plaintiff's argument had some level of merit, the ALJ also found that Plaintiff "retains the residual functional capacity to perform a wide range of medium work." *Id., at 24.* Plaintiff has offered no argument that this finding was erroneous and, consequently, whether Plaintiff can or cannot return to one specific location of previous employment is irrelevant. *See***, Plaintiff's Memorandum.**

Plaintiff's third and final argument for reversal of the ALJ's decision is that because the Plaintiff testified that he could not afford medical treatment, the "ALJ should not have determined that the claimant's testimony was totally discredited by his failure to seek treatment without giving the claimant the opportunity to show his lack of resources." *Id.,* **at 7.** Plaintiff asserts that the ALJ should have ordered a "consultative exam" rather than "hold the lack of medical care because of financial reasons against" Plaintiff. *Id.*

It first bears noting that Plaintiff's characterization of the ALJ's finding is erroneous. He did not, as Plaintiff contends, "totally discredit" Plaintiff's testimony. Rather, the ALJ found that Plaintiff's "testimony cannot be found to be fully credible" due to the lack of supporting contemporaneous

medical documentation. **Tr., at 23.** Second, as Defendant notes, a consultative examination in May 2005 would have been an exercise in futility given that the period in question was February 20, 2002 (alleged date of disability onset) through June 30, 2002 (date last insured). Such examination in May 2005 could not have produced relevant "statements from treating sources indicating specific physical limitations" between February and June 2002. *Id.* Finally, even if relevant documentation could have been produced by such an examination, there would have been no error in the ALJ's failure to order same because the record simply does not support Plaintiff's position that documentation of disability was lacking due to financial concerns (*i.e.*, but for his inability to afford medical care Plaintiff would have had sufficient disability documentation). On the contrary, the record is replete with documentation of medical visits and procedures occurring before, during, and after the period in question. ***See, id.*, at 201-322.** However, those records simply do not establish the type of severe limitations as described in Plaintiff's testimony. For example, medical records from February 2002 indicate that Plaintiff had "*some tenderness* along the medial lumbar area" and that he was having "*intermittent problems* with his low back pain[.]" ***Id.*, at 215-16 (emphasis added).**

Further, as the ALJ noted, "[n]o treating physician has described the claimant as 'disabled' or imposed specific functional limitations prior to the date last insured[,]" and the "records show that only in 2003, well after the date last insured, did Dr. Anderson limit the claimant to lifting not more than 10 pounds and from standing or walking for more than 2 hours in an eight-hour day and from stooping and crouching."[4] *Id.*, **at 23.** Plaintiff's third assignment of error is without merit.

Having reviewed the ALJ's decision and the entirety of the record, the Court finds such decision was reached by application of the correct legal standard and was supported by substantial evidence. *Craig*, **76 F.3d at 589.** The decision will, therefore, be affirmed. *Id.*

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion for summary judgment is **DENIED**, and Defendant's motion for summary judgment is

---

[4] The Court also notes that despite the fact that such limitations were not imposed until approximately a full year from the period in question, the ALJ *still* - to Plaintiff's benefit - included such limitations in the hypothetical question posed to the vocational expert and referenced such limitations multiple times in his written decision. **See, Tr., at 21, 23, 479.**

**GRANTED**.  A Judgment affirming the Commissioner's decision and dismissing this action is filed herewith.

Signed: June 21, 2006

Lacy H. Thornburg
United States District Judge